IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID JOHNSON, )
)
        Plaintiff, )
) 02:09cv1073
    v. ) **Electronic Filing**
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL SECURITY, )
)
        Defendant. )
)

MEMORANDUM OPINION

July 21, 2010

## I. INTRODUCTION

Plaintiff David Johnson ("Johnson") brings the present action pursuant to 42 U.S.C. §405(g), seeking judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") and disability insurance benefits (DIB) under Title II § 401-433 and Title XVI of the Social Security Act (the "Act")[42 U.S.C. §§ 1381-1382f]. Before this Court are cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. The record has been developed at the administrative level. For the foregoing reasons, this Court will grant Johnson's Motion for Summary Judgment (Doc. No. 8) and will deny the Commissioner's Motion for Summary Judgment (Doc. No. 10). The Commissioner's decision will be REVERSED and the case remanded solely for a calculation of the benefits owed to Johnson under Title II and XVI.

## II. PROCEDURAL HISTORY

Johnson applied for SSI and DIB on April 30, 2007, alleging disability since December 13, 1998. R.15. Johnson alleged an inability to engage in any substantial gainful activity since December 13, 1998, when he fell off of a ladder while on duty as a grocery store manager. R. 151. Johnson's application was administratively denied on February 27, 2006. R. 3. Johnson responded on November 27, 2007, by timely filing a request for an administrative hearing. R. 44. On June 11, 2008, a hearing was held in Johnstown, Pennsylvania before Administrative

Law Judge Patricia C. Henry (the "ALJ"). R. 352. Johnson, who was represented by counsel at the hearing, appeared and testified. R. 15. Testimony was also taken from Mark L. Heckman, an impartial vocational expert. R. 15. In a decision dated July, 18, 2008, the ALJ found that Johnson was not "disabled" within the meaning of the Act as Johnson could perform a range of unskilled, light work in jobs such as ticket seller, coupon redemption clerk, and information clerk. R. 25-26. On January 30, 2009, the Appeals Counsel denied Johnson's request for review, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 7-9.

Johnson commenced the present action on August 26, 2009, by filing a complaint against the Commissioner, seeking judicial review of the Commissioner's decision. Johnson and the Commissioner filed motions for summary judgment on December 4, 2009, and January 4, 2010, respectively. The motions are now before the Court.

### III. STATEMENT OF THE CASE

The documentary record indicates that Johnson suffers from impairments that began on December 13, 1998 after Johnson, then thirty-nine and employed as a grocery store manager, missed a step while climbing a ladder and fell three to four feet landing on his left side and buttock. R. 151. Following the fall, Johnson sought treatment from Gregg Goldstrohm, M.D. and Gregory Bisignani, M.D. R. 150. Johnson complained of back pain and pain going down his right leg. R. 150. Following an MRI and additional visits in January 1999, Dr. Bisignani diagnosed Johnson with a herniated disk at T8-9, and referred Plaintiff to W. Timothy Ward, M.D. of UPMC Health System Department of Orthopaedic Surgery, for evaluation. R. 149. A medical record of this injury from Dr. Ward dated January 29, 1999, summarized the onset of Johnson's impairments. R. 151. Dr. Ward noted that shortly after Johnson's fall, Johnson reported left sided low back pain and self-reported bilateral rib cage discomfort. Tr. 151. Dr. Ward also noted that Johnson's cervical and lumbar spine MRIs did not suggest a ruptured disk and found nothing which explained Johnson's back pain. R. 151. Dr. Ward could find "no good explanation for Mr. Johnson's back pain." R. 152.

In February 1999, Neurosurgeon Parvis Bahgai, M.D., examined Johnson as well as

previous diagnostic studies, and opined that Johnson had soft disk herniation at the left T8-9 level. R. 154. Dr. Bahgai performed a microdiskectomy of the T8-9 herniated disk. R. 166-67.

Following the microdiskectomy between February and July 1999, Johnson was treated on at least six occasions by Neurologist Carlos Marrero, M.D. R. 169-77. Because there were no noted complications from the microdiskectomy procedure, Dr. Marrero prescribed pain medication, including Lorcet, Soma and Lodine and recommended that Johnson perform total body resistance therapy once he fully recovered from the surgery. R. 169-77.

In September 1999, at the request of the Social Security Administration, Johnson underwent an independent medical examination and evaluation conducted by In-Bum Park, M.D. R.178. Dr. Park noted that Johnson told him that, "he can tolerate sitting 20 minutes, walking 1-1/2 hour, and standing ½ hour." R. 178. Dr. Park observed that Johnson had full range of motion in both the upper and lower extremities and 4/5 strength in his lower extremities. R. 178, 180-81. Based on the examination and evaluation, Dr. Park concluded that Johnson's job capacity was "moderately limited." R. 179. He also noted that "the patient is unable to lift or carry anything. The patient is able to stand and walk less than one hour per day. The patient is able to sit less than 3 hours per (day). The patient is limited with pushing and pulling with the lower extremities. The patient cannot bend, kneel, stoop, crouch, balance or climb." R. 179.

In October 1999, state agency physician, Nghia Tran, M.D., assessed Johnson's residual functional capacity ("RFC") and concluded that Johnson would be able to perform light exertional work within six months. R. 182-187. Dr. Tran based this conclusion on factors such as Johnson could lift twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight-hour workday; and sit for approximately six hours in an eight-hour workday. R. 183.

From January 2005 through January 2008, Johnson was treated by Lee J. Harmatz, a family practitioner. R. 224-65, 294-304. Dr. Harmatz noted that Johnson had chronic back pain and degenerative joint disease of the spine. R. 227, 229, 233. On April 20, 2007, Dr. Harmatz stated that he would grant Johnson disability for the next year. R. 221, 301.

In addition to treatment by his family practitioner, between November 2004 and

3

November 2006, Johnson was examined by and occasionally received treatment from Chiropractor Alan Cappellini, D.C. R. 215-23. The treatments seemed to ease Johnson's pain as Dr. Cappellini noted that Johnson reported feeling better following treatment. R. 218-220. Dr. Cappellini also noted that Johnson was not taking any medication and had returned to function following his back surgery. R. 220-22.

In November 2005, Johnson's RFC was assessed again by another agency medical consultant. Tr. 204-11. This RFC had similar findings as the October 1999 assessment. The consultant determined that Johnson could lift twenty pounds occasionally and ten pounds frequently; stand for at least two hours in an eight-hour workday and sit for six hours in an eight-hour workday. R. 205.

On January 20, 2006, pain specialist John Park, M.D. examined Johnson who was complaining of pain across his lower back and legs. R. 212. Dr. Park noted that Johnson had full 5/5 strength in his extremities as well as full or almost full range of motion of the neck, shoulders, elbows, wrists, and knees. R. 213. Dr. Park opined that Johnson could lift and carry twenty pounds occasionally; sit for three hours or less per day and stand/walk for three hours or less per day. Like Dr. In-Bum Park's 1999 assessment, Dr. John Park concluded that Johnson's employment capacity was "moderately limited." R. 214.

On September 18, 2007, Dr. Cappellini referred Johnson to William Mitchell, M.D., a board certified Orthopedic Specialist. Following the initial examination through March 2008, Johnson had a monthly exam by Dr. Mitchell. R. 272. Dr. Mitchell administered a number of tests throughout Johnson's visits and concluded following the initial examination that Johnson had the functional capacity to perform less than eight hours of work per day. R. 272. Dr. Mitchell noted that Johnson was unable to work due to post-traumatic chronic low back pain, post-traumatic facet arthropathy L4-L5 and L5-S1 joint dysfunction lumbar spine and post-traumatic T8 facet syndrome thoracic spine. R. 271. Dr. Mitchell noted that these limitations prevented Johnson from bending, kneeling, stooping, and crouching. R. 273. He also noted that Johnson could occasionally lift and carry up to 100 pounds; could sit for three hours in an eight-hour workday and was capable of standing and walking four hours in an eight-hour workday. R.

4

272.

Dr. Mitchell noted that Johnson had baseline pain levels of 4/10 with an increase to 8/10 with activity. R. 321. Johnson's pain was noted to increase with ambulation, bending, arising from a seated position, sitting fifteen minutes, walking more than twenty to thirty minutes, sitting more than thirty minutes, lifting more than five pounds and riding in a car more than thirty to sixty minutes. R. 307, 311, 313, 321.

Johnson's only psychological examination was conducted by Psychologist Tim Bridges in October 2007. R. 274-80. Dr. Bridges described Johnson as pleasant and noted that he had never received psychiatric care. R. 275, 277-78. Johnson reported that he was having a positive reaction to his depression medication. Dr. Bridges noted that Johnson was capable of handling his own daily and financial affairs and expressed no concerns for Johnson's ability to interact and work in an employment situation. R. 276-78.

At the hearing, Johnson testified that he had last worked in 2003, as a loader for United States Postal Service. R. 365. Johnson testified that he worked for UPS for approximately one year, working twenty hours a week. R. 365. Johnson testified that he is unable to work because of "physical and my mental capabilities" that first began following a 1998 fall from a ladder while working at Shop N' Save. R. 369. He has not been employed in any capacity since 2003. R. 365.

Johnson testified that he has pain in his lower back R. 370. Following the accident, Johnson testified that he couldn't do what he normally did such as walk, sit, bend. R. 376. He testified that he couldn't sit for longer than five to twenty minutes without switching positions and could maintain a seated position for a half an hour or more. R. 377. Johnson also testified that he could probably walk for an hour before he would have to stop due to constant pain. R. 379.

During the hearing before the ALJ, Johnson reported that he is able to care for the majority of his personal needs without assistance, such as driving, reading, watching television. R. 379-80. Johnson also reported he performs various household chores such as preparing meals, cleaning, and mowing the lawn. R. 379-80. He also testified that he was receiving physical

treatment from Dr. Harmatz and Dr. Mitchell. R. 370. Johnson further testified that he was not seeing a mental health professional. R. 370.

**IV.　STANDARD OF REVIEW**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

6

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting

7

> what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7(3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V.    THE ALJ'S DECISION

In her decision, the ALJ determined that Johnson had not engaged in substantial gainful activity subsequent to his alleged onset date.  R. 15.  There was evidence that Johnson had worked since the alleged disability, but the average monthly earnings did not constitute substantial gainful activity as set forth in the Social Security Regulations.  R. 47.  Johnson was found to be suffering from lumbar disc disease, post-traumatic facet arthropathy at L4-5 and L5-S1, S1 joint dysfunction, post-traumatic facet syndrome of the thoracic spine, depression and a post-traumatic stress disorder.  *Id.*  Although the impairments were deemed to be "severe" within the meaning of Social Security Ruling 85-28 and Regulations 404.1520(c) and 416.920(c), they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").  R. 18.  The ALJ specifically noted that "no medical source of record has opined that the claimant's impairments either meet or equal a listed impairment."  R. 18.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Johnson's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for work requiring more than occasional postural maneuvers such as stooping, kneeling, crouching, crawling and climbing or the performance of other than simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes.  R. 20.

The ALJ found that Johnson was unable to perform his past relevant work  as a grocery

8

manager and material handler as his impairments limit him to no more than simple, repetitive (i.e. unskilled) job tasks. *Id.* The ALJ found that Johnson's Residual Functional Capacity to perform light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b), along with Johnson's age, education, work experience provided that there are jobs that exist in significant numbers in the national economy that Johnson can perform. *Id.* Namely, the Vocational Expert testified that Johnson would be able to perform the requirements of representative occupations such as a ticket seller, a coupon redemption clerk and an information clerk. R. 25. The Vocational Expert's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C.§ § 423(d)(2)(A) and 1382c(a)(3)(B). R. 25. Based on the vocational expert's testimony, the ALJ concluded that a finding of "not disabled" was appropriate because Johnson has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. 25. The ALJ concluded that Johnson had not been under a disability within the meaning of the Social Security Act from December 13, 1998 through the date of the decision, July 18, 2008.

Johnson was born on July 21, 1959, he was thirty-nine years old on his alleged onset date, forty-seven years old on his date last insured and was forty-eight years old as of the date of the ALJ's decision. R. 24. He was classified as a "younger individual" under the Commissioner's regulations. 20 C.F.R. § 416.963(d). He had a high school equivalency diploma and the ability to communicate in English. R. 364. Based on the application for a period of disability and DIB filed on April 30, 2007, the ALJ concluded that a finding of "not disabled" for a period of disability and DIB was directed by Sections 216(I) and 223(d) of the Social Security Act. Furthermore, given the applicable Residual Functional Capacity and vocational assessments, the ALJ found Johnson was not disabled under Section 1614(a)(3)(A) of the Social Security Act. R. 26.

**VI.  DISCUSSION**

    A.    <u>The ALJ's Opinion Was Not Supported by Substantive Evidence</u>

In support of his Motion for Summary Judgment (Doc. No. 8), Johnson first argues that

9

his record contains four consistent opinions (Dr. Mitchell, treating orthopedist, Dr. Harmatz, treating Primary Care Physician and two consultative examiners: Drs. In-Bum and John Park) stating that he is unable to work a full eight-hour workday due to his chronic pain. More specifically, Johnson posits that, "in the face of this consistent and uncontradicted evidence, the ALJ plainly violated the treating physician rule set forth in Third Circuit case law by rejecting all 4 opinions in place of her own amorphous conclusions gleaned from the record." To be eligible for benefits, Johnson, as plaintiff, has the burden of showing a medically determinable impairment that is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d) (2)(A); 20 C.F.R. §§ 404.1505, 416.905; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). Johnson argues that the ALJ's determination of non-disability was error because she did not consider the consistent medical opinion evidence that demonstrated a severe impairment that prevents him from any substantial gainful activity that exists in the national economy. In this instance, the ALJ erred in giving minimal weight to the physicians' consistent medical opinions that Johnson was unable to work a full eight hour workday, instead relied on her own conclusions and inferences.

The Third Circuit has emphasized that a treating physician's opinion regarding a claimant's ability to work is entitled to substantial weight. *See Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981). More recently, the Court recognized that this is "(the) cardinal principle guiding disability eligibility determinations." *Morales v. Apfel*, 225 F.3d 310, 317 (3d. Cir. 2000). This principle is especially true when the treating physician's opinion reflects "expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317, citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999).

In 2008, the Third Circuit in *Brownawell v. Comm.*, 554 F.3d 352 (3d Cir. 2008), reiterated the "treating physician rule." The Court reversed and awarded plaintiff benefits, holding that the ALJ's decision was "clearly erroneous" and was not supported by substantial evidence because the ALJ failed to give appropriate weight to the opinions of the claimant's treating physicians which were confirmed by a consultative examiner. *Brownawell*, 554 F.3d at 355. The ALJ in *Brownawell* relied on opinions of the State Agency physician as a basis to deny

benefits. *Id.* at 361. The Third Circuit rejected this reliance noting that "this Court has consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who does not examine the claimant when such testimony conflicts with testimony of the claimant's treating physician. *Id.* at 361(internal quotations omitted) citing *Dorf v. Comm.*, 794 F.2d 896, 901 (3d Cir. 1986).

Though treating physicians' opinions that a claimant is unable to work are entitled to substantial weight, opinions of disability are not dispositive because the issue of any claimant's disability is exclusively reserved for the Commissioner. 20 C.F.R.§§ 404.1527(e), 416.927(e). The regulations specifically provide that the treating source physician's opinions on the issue of disability are "never entitled to controlling weight or special significance." 20 C.F.R.§§ 404.1527(e), 416.927(e) *see also Adorno v. Sullivan*, 40 F.3d 43, 47-48 (3d Cir. 1994). The ALJ in the present case was not obligated to accept Drs. Harmatz and Mitchell's opinions that Johnson was disabled. 20 C.F.R.§§ 404.1527(e), 416.927(e). However, she was obligated to give substantial weight to treating physicians' medical opinions regarding Johnson's ability to work, especially as those opinions were based on continued observation of Johnson's condition over a period of time. *Cotter*, 642 F.2d at 700, *Morales*, 225 F.3d at 317.

In the present case, the ALJ found that Drs. Harmatz and Mitchell's opinions were not supported by either the medical or non-medical evidence in the record. R. 20-24. The Third Circuit has consistently recognized that an ALJ may reject the opinion of a treating physician when that opinion is contradicted by other probative medical evidence. *Morales*, 225 F.3d at 317; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). Indeed, a treating physician's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the case in order to warrant controlling weight. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). The ALJ's conclusion that the opinions of Drs. Harmatz and Mitchell were based on Johnson's subjective allegations of disability rather than objective medical findings is clearly erroneous under Third Circuit case law. R. 20-23. The ALJ specifically noted that though Johnson, "reported that he is unable to lift and carry heavy objects or to sit, stand and walk for prolonged periods of time due to his

11

discomfort" (R. 7, Exhibits 4E, 8E, R. 362-96), his self-reported activities of daily living are inconsistent with such symptoms. R. 7. This determination failed to give proper weight to the opinions of the treating and consultative physicians and was instead based on the ALJ's own conclusions. An ALJ may not reject the opinions of treating physicians unless those opinions are contradicted by other medical evidence. *Morales*, 225 F.3d at 317. An ALJ's opinion of disability must not, as in this case, be based on her credibility judgments, speculation or lay opinion. *Adorno*, 40 F.3d at 47.

The ALJ based her determination of non-disability on her own conclusions and lay opinion of the treatment records and Johnson's reported daily activities. R. 23-24. In doing so, she rejected all four physicians' opinions, both the two treating physicians, Drs. Harmatz and Mitchell, as well as the evaluating physicians, Drs. In-Bum Park and John Park's that Johnson was unable to work an eight workday.[1] Dr. Mitchell stated that Johnson could only stand/walk two to four hours per day and sit a total of three hours. R. 272. Dr. Harmatz noted that Johnson was precluded from performing any gainful employment due to "chronic back pain". R. 325. Dr. In-Bum Park concluded that Johnson is "able to stand and walk less than one hour per day . . .sit less than 3 hours per day" R. 179. Dr. John Park similarly noted that Johnson could stand and walk three hours or less and sit three hours or less during the workday. R. 214.

These medical opinions necessitated that Johnson had a medically determinable impairment that is so severe that it prevents him from engaging in any substantial gainful activity that exists as the national economy and is therefore disabled. *Heckler*, 461 U.S. at 460. Under the Act, Residual Function Capacity assessments must consider a claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis", which is "8 hours a day, for 5 days a week, or an equivalent work schedule,"

---

[1] The only contradicting opinions in the record are those of Dr. Tran and another State Agency Medical consultant whose opinions were based only on Dr. In-Bum Park's opinion and therefore are not based on the whole medical evidence of record. T.183, 205. These opinions conflict with four physicians who actually examined Johnson and therefore, cannot be relied on to minimize the weight of Drs. Harmatz and Mitchell and Drs. In-Bum and John Park's opinions. *See Brownawell*, 554 F.3d at 361.

therefore, Johnson met this burden. Social Security Ruling 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims")(hereinafter "SSR 96-8p"). These specific medical opinions were entitled to substantial weight, but instead the ALJ, without citing to any contradicting medical source, concluded based on her own medical interpretation of the record, that all four physicians' opinions were inconsistent with the medical evidence as a whole. R. 23-24. This was error as these specific functional limitations were not the plainly vague conclusory statements that Johnson is disabled or unable to work of the type that the Commissioner may ignore pursuant to 20 C.F.R. § 404.1527(e), 416.927(e). Rather, Johnson's documented functional limitations render him unable to work eight hours a day or an equivalent and he is therefore disabled under the Acts and Regulations. SSR 96-8p.

In her decision, ALJ stated that Drs. Harmatz and Mitchell's own reports did not support their conclusions of disability, but rather served to contradict conclusions of disability and ultimately led her to give them minimal weight. R.24. She noted that Dr. Harmatz found that Johnson showed upper extremity strength and was never in acute distress. R. 227, 229, 233, 235. Further, she noted Dr. Harmatz's notes that: in May 2005, Johnson had been performing landscape work; in January 2006, Johnson had been cutting down trees; and in November 2006, Johnson reported to Dr. Harmatz that he had been doing demolition work and repetitive bending and carrying when he felt sudden pain. R. 23. The ALJ also noted that Dr. Harmatz did not prescribe an aggressive course of treatment. R. 23. Despite the ALJ's insistence that these observations contradict the physicians' opinions, that is not the case.

Neither Drs. Harmatz or Mitchell concluded that Johnson was unable to undertake any physical activity, an argument the ALJ seems to rely on in her decision to give their opinions minimal weight. Rather, Dr. Mitchell concluded that Johnson's pain, a baseline of 4/10, increased to 8/10 with sitting more than fifteen minutes and walking or sitting more than thirty minutes. R. 321. Johnson had been under the care of Dr. Harmatz for more than three years when he concluded that Johnson was precluded from performing any gainful employment due to his "chronic back pain." This extended treatment gives Dr. Harmatz's opinion more credibility. *Morales*, 225 F.3d at 317. The ALJ pointed to random observations in the physicians' reports

13

and concluded that these notations contradicted the physicians' ultimate opinions on Johnson's inability to work. R. 24. The ALJ was obligated to give the treating physicians' opinions substantial weight, but instead based her determination on her credibility judgments, speculation or lay opinion. *Cotter*, 642 F.2d at 700, *Adorno*, 40 F.3d at 47. [2]

Finally, the ALJ found that Johnson's own testimony at the hearing contradicted the opinions of disability by his treating and consulting physicians. R. 20-23. This too was error. Johnson has remained active in his daily living, including taking care of his own his personal needs without assistance. The ALJ specifically noted that this independence is consistent with Johnson's ability to perform simple, repetitive, routine (i.e. unskilled) job tasks as supported by: Dr. Park's January 2006, observation that Johnson is alert with a good attention span; Dr. Bridges' report that Johnson was alert and oriented and without difficulty with general auditory or auditory processing; Dr. Bridge's Medical Source Statement that Johnson's ability to understand, remember, and carry out instructions was not affected; Johnson's ability to respond to questions at the hearing in an appropriate manner and the State Agency medical consultant who concluded that Johnson's emotional disorders were "non-severe." R. 19, 24. The speculative conclusion of the ALJ that these observations confirm Johnson's ability to perform simple, repetitive, and routine job tasks was error. An ALJ may not make "speculative inferences from medical reports." *Adorno*, 40 F.3d at 47. The ALJ in the present case ignored the four consistent opinions of Johnson's treating and examining physicians in concluding that Johnson's daily activities and any positive indicator in physicians' reports contradicted medical opinions that Johnson was unable to work. However, Johnson's daily activities themselves did not contradict the medical opinions that he was unable to work a full eight hour day. Indeed, none of the observations the ALJ contradicts the physicians' opinions that Johnson's ability to sit, stand, and walk made it impossible for him to complete an eight hour workday. R. 15-25. The ALJ was entitled to reject "a treating physician's opinion only on the basis of contradictory

---

[2] Indeed, unlike many cases, the opinions of the treating physicians that Johnson would be unable to work a full eight hour workday were further strengthened by corroborating opinions of the examining physicians, Drs. In-Bum and John Park. *See Brownawell*, 554 F.3d at 355.

14

medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Adorno,* 40 F.3d at 47.   In this case, the ALJ did not cite any contradictory medical opinions to determine that Johnson was capable of light work and therefore, was not entitled to reject the treating physicians' opinions.  R. 15-26, *Adorno*, 40 F.3d at 47.

The ALJ did not properly evaluate the opinions of Dr. Harmatz and Dr. Mitchell or those of the two consulting physicians and did not cite any contradictory medical opinions.  Therefore, based on the ALJ's decision, she unreasonably found the treating physicians' opinions were only entitled to minimal weight.  Accordingly, her decision that Johnson was capable of light work was not supported by substantial evidence.

  B.  The ALJ Relied on a Hypothetical Which Did Not Accurately Portray Johnson's Work Related Limitations

Johnson further argues in that the ALJ's failure to credit the physicians' opinions more than minimal weight led to her failure to give a detailed function-by-function assessment of Johnson's Residual Function Capacity.  Therefore, the ALJ's hypothetical question to the Vocational Expert ("VE") did not accurately portray Johnson's work related limitations. Doc. No. 9, 20.

An ALJ is required to consider all evidence before her and provide some indication of the evidence which is rejected and the reasons for discounting evidence in making a Residual Functional Capacity determination.  Doc. No. 9, 20, citing *Plummer*, 186 F.3d at 429.   When this is not done the reviewing court cannot tell if "significant probative evidence was not credited or simply ignored."  *Id.* at 429.

At step five of the sequential process, the ALJ must determine if the claimant has the ability to perform any other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In determining a claimant's ability, the ALJ can rely on the services of a Vocational Expert.  The ALJ can rely on his/her testimony provided that the ALJ's hypothetical question to the vocational expert accurately reflects the claimant's work-related limitations.  20 C.F.R. §§ 404.1566(e), 416.966(e), *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  In the present case, the ALJ asked the vocational expert to:

15

> "assume a hypothetical individual with this claimant's education, training, and work experience who is limited to light work; is limited to only occasional postural maneuvers such as stooping, kneeling, crouching, crawling, and climbing; is limited to simple, routine, repetitive tasks not performed in a fast paced production environment and involving only simple, work-related decisions and in general relatively few workplace changes. Are there jobs in the local and national economy that such an individual could perform?"

R. 397.

An ALJ's decision is not supported by substantive evidence if the ALJ did not accurately portray the claimant's individual impairments and limitations in his hypothetical question to the VE. *Chrupcala*, 829 F.2d at 1276. This is the error in the present case, as the ALJ relied upon an hypothetical which did not accurately portray Mr. Johnson's work related limitations in denying benefits. Specifically, the ALJ rejected the consistent opinions of four physicians stating that due to chronic pain, Johnson could not sit and/or stand for eight hours a day.

The hypothetical question in no way reflected the physicians' medical opinions that Johnson would be unable to work due to his inability to sit, walk or stand for extended periods of time. Furthermore, since the physician's opinions necessitate that Johnson is disabled because those limitations make it impossible to work, the ALJ's decision should have concluded with a determination of disability before any hypothetical question was asked.

### VII. Conclusion

The ALJ's decision that Johnson is not disabled within the meaning of the Act is not supported by substantial evidence because she did not afford treating physicians' opinions substantial weight as required by the Third Circuit. *Morales*, 225 F.3d at 317. In affording the treating physicians' opinions only minimal weight, the ALJ failed to reference any contradictory medical opinion, instead relying on her own conclusory inferences of the record. This rejection of uncontradicted medical opinions is error under Third Circuit case law. *Morales*, 225 F.3d at 317. The ALJ's conclusion that Johnson could perform light work with some limitations was not supported by substantial evidence. Indeed, since the treating physicians' concluded Johnson was unable to work for an eight hour workday, Johnson should have been found disabled. SSR 96-8p.

In light of the ALJ's unsupported conclusion that Johnson could perform light work, her hypothetical question to the VE did not accurately reflect Johnson's work related limitations. Therefore, the ALJ's opinion in the present case was not supported by substantial evidence and reversal is the most appropriate disposition of the case.

Accordingly, Defendant's motion for summary judgment will be **DENIED**. (Doc. No. 10). Plaintiff's motion for summary judgment (Doc. No. 8) will be **GRANTED**.

The ALJ's decision will be **REVERSED** and remanded solely for a calculation of the benefits owed to Johnson under Titles II and XVI.

An appropriate order follows.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Lindsay F. Brown, Esquire  
Law Office of Karl E. Osterhout  
1789 S. Braddock Avenue  
Suite 570  
Pittsburgh, PA 15218

Jessica Lieber Smolar, AUSA  
United States Attorney's Office  
Suite 4000  
U.S. Post Office & Courthouse  
700 Grant Street  
Pittsburgh, PA 15219